The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Welcome. We have one case set for argument in the United States v. Recio. I'm very pleased that we have Judge Browning with us here on video, and Judge Fletcher and I here. At this point, we have time set for 20 minutes for each side. And I think first we have counsel for the defendant's appellants. And who's arguing for defendants? We'll both argue. Both are. Mr. Shurtleff and Mr. Sullivan. OK, welcome. And then for the United States, Mr. Burrow. OK, well, welcome to you all. And thanks for your travel to be with us here today. Please proceed. And on the appellant's argument, if you'd like some rebuttal time, please hold back some time and leave it. Are you attempting to divide the argument equally, or does one do opening and the other appellant? If I may approach, Your Honor. Thomas Sullivan on behalf of Appellant Lopez. I would take eight minutes and reserve two and then defer ten minutes to Mr. Shurtleff after my eight minutes, if that's acceptable. OK, sure. Thank you. May it please the Court. Good afternoon. The Supreme Court remanded this case for further proceedings, concluding that the Ninth Circuit's conspiracy termination law holding in the Cruz case was erroneous. And it's left up to this panel to decide where this case goes now. In the Supreme Court, in briefing for Mr. Lopez, I made this assertion, and I'd like to share it with you. The conclusion below, which was this Court, should be affirmed regardless of Cruz. This case was correctly decided because the indictment and the government's stated view thereof limited the charged conspiracy to the pre-seizure involvement. Now, I'm not going to go into great details on the facts. We addressed those at our earlier argument, and this Court's made its decisions on what the facts did and did not prove. My point is this. Even though at the time Cruz said you could not create liability for post-seizure involvement, the government never attempted to do so. Cruz did not force the government to plead the case the way it pled it. Cruz did not force the government to agree to try this case with the jury instructions given. They conceded to those instructions, which had the very important time element of when the defendants joined. Well, wasn't Cruz important in what occurred? Because the judge, you had a first jury trial and a conviction, and then the Cruz issue was raised, and the Court granted a new trial based on that, as I understand it. Certainly. Cruz was important, and I think the district court and defense and the prosecution all felt at the time bound by Cruz. Correct. Cruz was important in the case. Counsel, in the first trial, the government was not constrained in any way by Cruz because they didn't have it in mind. Nobody had it in mind, I guess. So what evidence in the first trial was inhibited by Cruz? Nothing, I think. No evidence was inhibited by Cruz in the first trial. You are correct. And I believe the government has conceded at some point in the briefing that, or made the assertion, none of the parties were really aware of the dictates of Cruz. It was tried without that. So that leaves us with, in my view, the straight terms of the indictment that was at trial, in the first and second trial, which says, from on or about a date uncertain, but by November 18th, each of the defendants, including my client Lopez, did knowingly conspire. They completed their crime of conspiracy by the 18th, not on or about the 18th. And in every, well, in most every indictment I've seen, it's on or about. And this circuit has long recognized the importance of pleading on or about. Well, they said at least by. Is that what they said? They said, but by November 18th. And it's nearly 48 hours after that that my client appears. And I have provided this Court with the transcript of the oral argument before the Supreme Court where the solicitor generals conceded this. The only way the government can attach conspiracy liability to my client is on a theory that he was recruited after that time, after the government became involved, and strictly to participate in one load. That was their concession at the Supreme Court. Now, that puts this case in an impossible quandary. If that is the fact, if that is the truth, then the jury in this case would have had to acquit my client because the judge told them to. Why is that? The instructions and the prosecutor argued to the jury, if you conclude that this young man was recruited after the fact for the one load, he's innocent. That was the agreed upon issue at the second trial in this case. They willingly accepted that burden to prove, A, he joined beforehand, or, B, he joined a larger conspiracy. And now we have a concession based on this Court's fact findings. They did not prove either of them. So the government stood before a jury in Boise, Idaho, and said, if this young man, Mr. Lopez, was recruited after we became involved for one load, he is innocent. Was all premised on Cruz? Premised on Cruz. I'm possibly premised on Cruz. It's premised on the indictment also, yes. Like I said, we all, Cruz was precedent, binding precedent at the time. Of course, we weren't supposed to ignore Cruz. However, Cruz did not force the government to agree to that issue of trial because Cruz said, in these strange circumstances, like these sting operations, the government can still charge someone with attempting to possess, with possession, or it could charge a conspiracy, a conspiracy that actually existed at the time. So there was nothing to stop the government, even under Cruz, from charging this, that on or about a date uncertain, but by November 19th, after we seized the drugs, my client became involved. If they charged it that away, then we have a different case. And we know we have a different case because they stood in trial and said, that is the essential formulation of the issue, before or after. It's in the pleadings. We've given it to you in the excerpt of records. I cite to it in my briefs. They said, we agree with the essential formulation of that issue. When did he join? That is the critical component. And I would further like to cite you, if I can find it quickly, in my excerpt of record, to something stated by Solicitor General Dreeben, who said, Now, in light of the way the facts actually panned out at the trial, and given the holdings of the Ninth Circuit, that the government failed to prove pre-seizure involvement on the part of respondent couriers, my client, the indictment might have more accurately been written to say that, and I'm reading from page 40 of my excerpt, it might have more accurately been written to say that on November 18th, at least, a conspiracy was formed, and by the 19th, the respondents joined it. True enough. That's what it should have said. It didn't say it, and we're at the point now. It's not a simple variance. Can't it be constructively amended by the proof presented at trial? And the proof presented shows that they're involved picking up this $11 million worth of drugs in the truck. Why can't that be viewed as an amendment of the indictment? Well, the indictment has to be amended. The grand jury has to do the amending of the indictment. Well, can't it be amended by the proof offered at trial? No. Constructively? I would have to answer that question in the negative, and I would have to cite the court to a case relied on previously in the Ninth Circuit, Styrone v. United States at 361 United States 212, in which the court says that it may not, a court may not broaden the scope of the indictment with its jury instructions. It lies entirely within the province of the grand jury to amend the indictment. That is a holding there. I think you're past your 12 minutes, if you really want to reserve. Thank you. Let me answer one practical question. There seems to be some confusion in the papers as to who was driving the truck. The district court has one person, and some of the other papers have another. Who was driving the truck? You mean, was it Riccio or Lopez driving the load truck? The truck that was picked up out of the parking lot. It was Mr. Riccio who drove the load truck away, and it was Mr. Lopez who followed in the blue Mazda. Thank you. Thank you. May it please the Court. Counsel, it seems to me that what we're here about is to find out what is left after the Supreme Court's decision. They issued a remand to this Court. I would submit that the question is whether there is sufficient evidence of post-seizure involvement by Riccio in a conspiracy, this Court having previously determined and concluded that the pre-seizure evidence was insufficient. We need not revisit that issue. What this Court has to do, it seems to me, is look at the evidence in the context of whether the post-seizure activity implicates Mr. Riccio in a conspiracy. And in that regard, I would urge that it's, as this Court analyzed, albeit with respect to Judge Gould, who disagreed with that analysis, that that analysis can apply with equal force to the post-seizure activity of Mr. Riccio. And thus, I would submit, with respect, that the panel's decision in the amended opinion and order is correct and would remain correct. I would also submit that one of the questions that we have to face here or ought to face here is the question posed by Judge Fletcher in her concurrence. If the evidence was insufficient at the first trial, and if a majority of this panel were to conclude so, do we even get to the second trial? And I would submit, again, with respect, that Judge Fletcher's on to something in that regard. That if the evidence was insufficient at the first trial, that we ought not even be talking about whether we have a second trial, that the double jeopardy provisions would preclude a second trial. But, Counsel, I had Cruz in mind and indicated that in my concurrence, so that causes possibly a little trouble to you. Well, I appreciate that, Judge Fletcher, but I think that if you look at the evidence from the first trial, not regarding Cruz, throwing Cruz out, you're still looking at post-seizure. And I think your conclusion would be the same. The value of the evidence that was adduced to show post-seizure activity would be the same. And so I think your judgment as to double jeopardy would come out the same with or without regard to Cruz. So I would submit, and again with great respect to Judge Gould, that if we look at the evidence, we look at the evidence, and I know we've been to the Supreme Court in this case, and it's a great honor and all of that. But what we're talking about is did a jury receive evidence sufficient to convince a rational jury prior to fact that these guys were guilty of what they're charged with? What are the, you know, two or three most important points in your argument that the evidence was not, in your view, sufficient to show guilt post-seizure? Post-seizure, Judge Gould, the evidence is the same post-seizure as pre-seizure. We have the telephone calls. And then we have the non-owner insurance. And we have the — Was someone driving off with the truck? Mr. Resio was driving off with the truck, and he drove a circuitous route, and he had a fanciful story when he was stopped by the police. And that's one of the elements of evidence. There is no — that's all. There's the telephone calls. There's the driving off with the truck. There's the fact of the possession of the truck. There's the burning marijuana. And, again, I've smelled burning marijuana, but I've not — I've never smelled a load of marijuana. And I'm not sure that that's contentionally — After Cruz is eliminated, then is your position he's driving off with the truck, but he just doesn't know there are any drugs in it? We don't know that. And there's no evidence to show that he knows that, other than what we've seen, Judge Gould. We know that there was some telephone calls. We know that he was in the truck. We know that there was burning marijuana in the car being driven — burned marijuana in the car driven by Mr. Lopez, not by Mr. Resio. We know that there were some non-owner insurance. And, quite frankly, again, with respect, we recall the testimony, nobody had ever seen that before in an illegal alien, nor had they seen it before in a drug case. So what, if anything, does that prove? It proves he had non-owner insurance, but there's nobody to suggest that this is a standard operating procedure of conspiracies of this kind or quality. Why not provide Arce with the same kind of insurance? The jury was instructed they had to find some level of knowledge to convict so that we have to look at the evidence, given the government all reasonable inferences in light of the jury verdict, and then to say, was the evidence enough? Isn't that basically the framework here? I think that that's the framework, but what this Court has to do is determine, as it did in the first instance, whether that evidence was legally sufficient, not whether there was evidence. And, quite frankly, it was found wanting. And, you know, juries can do what they — sometimes what they want, and that's for the reviewing panel to say, well, this — this is a good case.    This is a good case. And we should have concluded that from this, but they shouldn't have rationally concluded that, that the non-owner insurance is — wasn't really probative of a fact that would allow a rational jury to conclude that it by itself or it in combination with some other factors indicate Mr. Arce always involved. It was just a fact. But it's — is it a probative fact? And so we can't just let the jury rummage around. That's why we have the reviewing court, and I think that's what this Court did in its analysis. It went through all of those. And all I'm suggesting, Your Honors, is that if you will take the same analysis without regard to Cruz, that the same kind of evidence doesn't fit post-seizure any more than it did pre-seizure. And again, and I would expect that, Judge Gould, quite frankly, that your analysis might be the same. I would hope it wouldn't be. I understand that. And I would hope that you would — you would take a look at the — does it — is it really probative that there was burning marijuana in a car driven by Lopez to assess guilt to Mr. Reseal? Is it really probative that there was non-owner insurance that nobody had seen before? Not whether he had it for 12 times, 12 receipts in his pockets or not. Or as Judge Browning said, he might have had it for any other purpose. He might have had it because he was an illegal alien. Who knows why he had it? Does it prove a part of a conspiracy? Telephone calls that were to here and there that were related to other people, is that probative of being involved in a conspiracy? Is the fact that he was driving off and told a goofy story, and clearly it was a goofy story, but does everybody that tells a goofy story become guilty of being involved in a large conspiracy? Was Mr. Arce recruited at the last minute? He went to Arizona and drove up with the $10 or $12 million worth of dope in a vehicle. Everybody accepted the proposition that he was just a bit player. Why couldn't these two young men have been recruited at the last minute just to go get a truck? Why did they have to be told that it was full of $10 or $12 million worth of dope? They were going to drive it 25 or 30 miles. Not from Phoenix, Arizona like Mr. Arce. So I submit that to me it gets rather simple what we're doing here today. And with respect to some of the other arguments, I think it's simple. Is the evidence sufficient? Can we go to the bank with the proposition that this evidence, and I think we've talked about it all here today, just this briefly, was it sufficient to convict these two guys of conspiracy post-seizure involvement? Do you want to retain any time for rebuttal? I'll say what I have, which is 120. Thank you, Your Honor. May it please the Court, I'm Alan Burrow with the United States Attorney's Office in Boise, Idaho. I would submit to the Court that a review of the various pleadings that were filed with the district court below as well as the briefing in this Court makes it clear that the only significance, that the timing of precisely when Recio and Lopez joined the conspiracy was predicated solely on the Cruz decision. At the first trial, the jury received a standard conspiracy instruction. And that instruction was that the government had to prove that first, beginning on or about a date uncertain, but by November 18, 1997, there was an agreement between two or more persons to possess with intent to distribute or distribute drugs. And secondly, that each defendant became a member of the conspiracy knowing of its objectives and so forth. It's the standard conspiracy jury instruction of this Court. Let's turn back to the indictment. You said very specifically that they had joined not later than the 18th. Isn't that right? Your Honor, that language is standard charging language that has appeared in literally hundreds of indictments. That may be, but are we supposed to say just because it's standard, we've got to apply it to this case whether it fits or not? No, Your Honor. This Court has, for example, in the Lakin case, which I cite in the brief, held that very similar language to that does not charge that each defendant joined the conspiracy by that date. That's what you said. No, ma'am. That's not what we allege. Your Honor, about a date uncertain, but by November 19, 1997, is that the language? Yes, Your Honor, and that is alleging that the conspiracy came into existence by that date. Let me read this to you. Defendants, and you've named Jimenez and Lopez, knowingly, intentionally, and unlawfully conspired. So you're tying it right to those two folks. Your Honor, I cited the Lakin case, which is a previous decision of this Court, in which that is not the way that this Court has traditionally interpreted this very standard charging language. It has interpreted it the same way the district court interpreted here when it instructed the jury with no objection from the defendants, which was what the government alleged was that the conspiratorial agreement had come into existence by that date. You say here that these people joined it by that date. Your Honor, I have to say that that's not the way that that language has been interpreted by this Court previously. That's not what the government meant, and that's not what the district court instructed the jury. The district court instructed the jury that that language means the conspiratorial agreement came into existence by that date, not that every defendant had joined by that date. The jury instruction said, if I have this right, that the jury could find Rescio or Lopez-Meza guilty of the larger conspiracy, whether they joined it before or after November 19th. That's the cruise. The smaller conspiracy, did the jury have to find them guilty of joining it when? Your Honor, in the second trial, when the cruise instruction was given, which is what you were just reading from, instruction 24, I believe, for the smaller conspiracy under cruise, this is where this timing issue comes in. From cruise only, the government had to prove either that the defendants joined by the time the drugs were seized, which, by the way, was not just November the 18th. It was 1.18 a.m. on November the 18th. That's what the government had to prove in the second trial on the smaller conspiracy theory. There was nothing like that in the first trial, and I would point out that even in the second trial, the jury was still instructed on the basic conspiracy instruction from this Court, the exact same languages from the first trial, and to that was added the special cruise instruction. The arguments that the defendants made before the jury in opening and closing in the second trial, in their briefs, in their post-trial motions for judgment of acquittal, the focus on the timing issue was not just the 18th in general. It was 1.18 a.m. on the 18th when the drugs were seized, and it was predicated on the cruise-based rule that upon the government's seizure of the drugs, the conspiracy ends, period. In fact, I believe it was Defendant Lopez who argued to the jury in closing argument in the second trial that even if a – that once the drugs were seized, the conspiracy has ended. It is impossible to achieve the objective. And even if a third defendant admitted to receiving a call on the 19th of November and knowingly picked up the drugs, he's simply not guilty of the conspiracy. The conspiracy has ended. Okay. So cruise is gone, and the Supreme Court's ruling takes that issue out of the case. But what about the – how do you deal with the Sterone case that was argued to us by Mr. Sullivan? I think he's arguing to effect that the indictment – literal language of the indictment can't be viewed as being amended by the proof. Well, Your Honor, I would argue that even if we assume for the purpose of argument that the government did allege and was required to prove that each defendant joined by the 18th, that as you suggested in your questioning of Mr. Sullivan, the law of variance – we're talking about a one-day variance here between the 18th and the 19th. The defendants cannot show any prejudice from that, and the law of this circuit and of every circuit that I'm aware of is that if the proof shows something different than what the indictment does, particularly in a conspiracy case where timing is not an element of the offense, then unless there is prejudice to the defendants, there's no grounds for overturning the conviction. And prejudice to the defendants means that they either were not placed on notice of what they were being charged with or that they could not sufficiently plead double jeopardy should they be charged subsequently. You're saying if the proof showed they conspired after the date of the seizure, after the time of the seizure, that even if the indictment had alleged they conspired before that time, it's viewed as being amended by the proof as long as there's no prejudice? Absolutely, Your Honor. That's what I thought the law was, but is there a case? Is there a Ninth Circuit case or a Supreme Court case that comes to mind on that? I believe I cited a case, Your Honor. I'll go back to your briefs. I know you did cover that variance issue in your briefs. It's also a plain error issue, right? Isn't it? Because there was no objection to the jury instructions? That's correct, Your Honor. There was not an objection to the standard. The only objections from the defendants in the second trial regarding the jury instructions were technical objections to some of the language of the crew's instruction. There were no objections to the other instructions, nor, to the best of my recollection, I don't recall any request for a multiple conspiracy instruction. What was the substance of the other conspiracy instruction, not the crew's instruction that you're separating out? Your Honor, I've already quoted the elements of the offense as given by the district court, which is that first beginning on or about a date uncertain, but by November 18, 1997, there was an agreement between two more persons to possess with intent to distribute or distribute cocaine or marijuana, and second, that each defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. The court also instructed the jury that you will note that the superseding indictment charges that the offenses were committed by a certain date. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged. That's standard instruction language there. There was no objection to that instruction? No, Your Honor. The court also instructed the jury without any objection. It is not necessary that all members of the conspiracy join it at the same time. It all – the court also instructed the jury without objection. It is no defense that a person's participation in a conspiracy was minor or for a short period of time. The only – How do you deal with the adequacy of the evidence? Now, you're really on this point arguing to a judge. I'm going to give this a fresh look, but I think my views in the first appeal on the sufficiency of the evidence with Cruz applicable, you know, lead me to think it was sufficient if they could have conspired to pick up that truck after it was seized. But, you know, how do you answer the arguments by Mr. Shurtleff and Mr. Sullivan that the evidence is just too vague and, you know, the phone calls are too indirect and there's just not enough to show they're conspirators? Well, Your Honor, the first way I argue that is by pointing out that that's a brand new argument. It has not been advanced before the district court nor before this court previously. Their arguments were based exclusively on Cruz and had to do with evidence of pre-seizure involvement. And I believe – I don't want to – I mean that the panel's decision will speak for itself, but I believe the majority of the panel in its decision – there was never really a question about the sufficiency of the evidence to show guilt in the conspiracy in general, meaning after the seizure of the drugs. The only question had to do with evidence being directly probative of pre-seizure involvement. And coming around in a more direct sense to your question, Your Honor, I would say that simply the events of November the 19th without anything more are far and away more than sufficient for a reasonable jury to find beyond reasonable doubt that Cruz, Gracio and Lopez were knowing members of the conspiracy and knowingly possessed the drugs that were in the truck. Okay. Be very specific and outline for us exactly what that evidence is. Okay, Your Honor. First of all, let's talk about the amount of drugs that we have involved in this case, which is a very large amount. It's worth a lot of money. It's a far-flung conspiracy that's involved going from Idaho all the way down into Arizona. It's involving a vehicle that has been modified in order to carry a large amount of drugs. I'm interested in the evidence that you can tie to Gracio and Lopez. We have no evidence that they knew the quantity. We have no evidence that they knew about the modification. My point, Your Honor, I'm trying to set the stage here. I know the stage, but tell me the specifics. This drug run, which was very significant, a lot of money had gone wrong. The truck was already late. Tell me about what Gracio and Lopez did. These two men were sent to retrieve this truck with all this money and these drugs. After the mission, something had already gone awry. The truck had not shown up on time, and furthermore, the phone call that goes to a So they know there's been some police involvement. Who's they? The conspirators, the people in Arizona, the people in Idaho who were trying to accomplish those who were in charge of the conspiracy. Tell me what Gracio and Lopez knew. They knew that they were supposed to pick up this truck and bring it back during a critical stage of this. What I'm trying to say is the circumstantial evidence here gives rise to an extremely strong inference that these conspirators are not going to send out two dilettantes, two neophytes, to go retrieve this truck. Now that things have already gone wrong, they know there's been some police involvement down in Nevada, and there's evidence that Lopez and Gracio, they were within 200 yards of this truck for a full hour before they came to get it. Okay, now that's good evidence. That's the first good evidence you've given me. Now give me some more. And that tends to go along with the fact that reasonably, I mean, this is a business. There's a lot of money at stake here. The conspirators, those in control, are not going to send two dilettantes out to receive this truck. Well, what did the man say he was going to? Who did the man say he was going to send? He said he was going to send a muchacho. What's that mean? Well, Your Honor, I am not fluent in Spanish, and I saw two different translations of that word in the transcript, so I'm not sure. That's nice. And I would point out the most significant thing about that, Your Honor, is that Arce, unlike in the Cruz case, Arce is not calling a couple of his friends local in Idaho to come pick up the truck and help him out. He's calling some number in Arizona. He doesn't even know who it is. This is somebody in Arizona. He calls a number in Arizona and tells them the truck is up here in Idaho at this mall, and all of a sudden, things begin to happen in Idaho. This is a big conspiracy, and the truck is not where it's supposed to be. It's a day late, at least by this point. They know there's been some police involvement. They're simply... But tell me the rest of the things that tie these two fellows to this conspiracy. The fact that they've arrived and they've viewed the truck for an hour, what else? To tie them to the conspiracy overall? To show some evidence that they're guilty, that they're not just going to pick up the truck. Someone called them and said, hey, will you pick up the truck? A conspirator in Arizona is called and told that the truck's there with the drugs. These two guys are sent out to come get it. There's evidence that they conducted counter-surveillance, which tends to show their sophistication. What's the significance of the story they gave when they were stopped? I'm sorry, Your Honor? What's the significance of the stories they gave when they were stopped? Well, Your Honor, I would argue that the inference would be that if they're two innocent dupes, they're simply going to tell the truth. But they know there's consciousness of guilt there. They know they need to make up a story. That's another piece of good evidence. Why can't you tell us the rest? Maybe there isn't any more. Well, Your Honor, I would submit that all these things are more than sufficient. The phone tolls are complicated, but I do believe that there is relevant evidence that comes from them. But I think the fact that they are, in fact, in possession of this truck, there's evidence of them conducting counter-surveillance ahead of time. They're the ones, not anybody else, who are sent out to receive this very valuable cargo. They make up bogus stories. One of them, Mr. Lopez, on the way back, stops to make a phone call back to what the government believed the stash house would be. That would be some evidence, a phone call that we've got the truck. They're taking a circuitous route, which is not the most direct route to where they're going. All of these things, I think, provide circumstantial evidence of what's in their mind. Okay. Now, tell me, what's the remedy? If we were to decide that we can't stand by an acquittal of these folks, what's the remedy? Your Honor, I believe that the conviction should be affirmed, because here the jury was correctly instructed on all the elements of conspiracy. In other words, the jury here was required to find more, not less, than the law requires. Affirm what verdict? We can't affirm the verdict in the second case, because we found that there was insufficient evidence to find a conspiracy pre-November 18. Your Honor, I believe that once Cruz is gone, which is what the Supreme Court has done, then I believe the conspiracy conviction after the second trial, that's exactly what should happen. It should be affirmed. You say, as I understand it, you're arguing that we could affirm the second jury verdict on the basis that the evidence the jury received was sufficient to show conspiracy elements met after the seizure. It was sufficient to show their involvement after the seizure. And apart from Cruz, whether they get involved before the seizure, after the seizure, doesn't matter, apart from Cruz. It's totally irrelevant. So the evidence was sufficient, number one. Number two, the jury was correctly instructed on all the elements of conspiracy. The Cruz stuff was in addition. The government was required to prove more than it should have been. Thirdly, the jury in its verdict necessarily, in finding that the defendants were guilty under Cruz, they necessarily found that they were guilty under standard, traditional, correct conspiracy law. And so there's no need here for a third trial. Can we go back to the first trial? Yes, ma'am. Can we? Yes, ma'am. Oh, to affirm that? I do not believe that there are any double jeopardy problems with going back to the first trial, because once the jury was correctly instructed under the Supreme Court law of conspiracy,  there was no allegations of problems there. The only reason why defendants were granted a second trial is because post-trial they raised the Cruz issue, and the judge said, well, I didn't correctly instruct the jury, and I don't know what theory they convicted defendants on. And so I don't see any double jeopardy impediment to going back to the first trial. The second trial, under the instructions that were given, had nothing to do with the post-November 18 conduct. I don't see how we could affirm the verdict on the second trial. Your Honor, I would argue that you could, because they necessarily found everything that they were required to find beyond reasonable doubt. But I don't see any impediment, though. Under the unique circumstances of this case, to going back to the first trial. And in that regard, I know that Mr. Resio's substantive conviction comes up as well. And I know that earlier, as this Court noted, the prosecutor conceded that Mr. Resio would have received a new trial had he included that in his post-trial motion. But that was a very ill-advised concession, because Mr. Lopez received a new trial on the substantive count because the jury may have based it on a Pinkerton theory. Mr. Resio, that's not possible. He was driving the truck. So I confess that we did concede that point. We should not have. That's an error. But I believe that either trial could be affirmed here, both were fair trials. We're taking you past your time, but I want to be sure you have any time you need to answer any questions from Judge Fletcher or Judge Browning, and we'll add a little time to the appellants. I'm confused about what we do with the possession counts. The government dismissed it as to Lopez. Is that right? It's out of the indictment. It's out of the case. Is that correct? Yes, ma'am. It was dismissed so that there would not be an incongruity in the second trial. No matter what we do, that's gone. Is that right? That's right. Now, as to Resio, he wasn't retried on that because he was convicted. Isn't that right? He was convicted in the first trial. Nobody's challenging that, I guess. Well, they challenged it on the basis of ineffective assistance of counsel, arguing that counsel forgot to put that in his post-trial motion and he would have received a new trial otherwise. But, number one, once you take Cruz out, he would not have received a new trial. Number two, it was an error for the United States to acknowledge that he would have received a new trial had he included it So I think that conviction is in good shape once Cruz is taken out of the mix. Well, I guess I remain perplexed as to the remedy that could be given if we decide that these convictions should somehow not be reversed. I think that the court could go either way with it, either by affirming the convictions after the first trial or the second trial. I think the court will be on solid ground either way it goes. The defendants received two fair trials. They were convicted beyond reasonable doubt as to every element of conspiracy apart from Cruz in two trials. They received a second trial only because of Cruz. Cruz has now been overruled. I think the court is on solid ground either way. Thank you, counsel. Thank you, Your Honor. Now, we had only about a minute and 20 seconds on the clock for the two of you. But the government, we took the government over almost three and a half minutes over their time. So why don't we say each of you can have two and a half minutes to three minutes. And you may as well go for it. Thank you. I appreciate your time. A couple of points. I don't think there's a legal basis to go and reinstate the verdict from the first trial. I just don't know how that's accomplished. The district judge set it aside. It's not what I think we're dealing with one verdict. That's the second trial. Now, and I want to take you back. Counsel has argued what their view of the indictment was, and that it simply pled a conspiracy form by the 18th and our guys came in after. In their pleadings in district court, they said, in this regard, they're asking the judge to reinstate the first verdict. The telephone call by Arce was not a recruitment call, but one of notice in a preexisting conspiracy as far as they, Lopez, knew and were concerned. They've always maintained they were members all along. They've always maintained it. Second point. The jury was specifically in the second trial given two bases to convict. One, you find they joined before the 18th, or you find they joined something bigger than that. And this Court's already said there's no evidence of either. So there's nothing, I submit, nothing for this Court to say to affirm. To affirm, we have to go to that third area that I quoted from earlier that wasn't there before the jury. They were recruited after the fact. They were recruited after the fact. I'm sorry. For the one load. Now, it's untenable. It's completely inconsistent, and it's not allowed under the Due Process Clause for them to take such inconsistent positions. And I'm citing the Thompson v. Calderon, 120 Federal 3rd, 1045, from this circuit. The prosecutor cannot pursue wholly inconsistent theories of a case at separate trials. They can't say, jury of Boise, Idaho, if they're after recruits for one load, let them go. We've agreed. That's the issue. And they can't come in now and say, affirm a conviction just for that. It's untenable under the Due Process Clause. Moving on. Mr. Burrow indicated time isn't critical in a jury, I mean, in a conspiracy case. I cite the Court's Rules of Criminal Procedure 7. The comments, the date of the indictment, I'm quoting, is significant in all cases, but especially in conspiracy cases. The date is critical. It's especially critical in this case, and we were prejudiced because we were promised by Kim Lindquist, the United States Attorney, here's what we're going to trial on. Your boys joined, and I use the word boys because that's what we say muchacho is, before the 18th, and that's what we're trying. That's the case that's going to trial, and that's what we argued. And there's no evidence of that. And so whatever happens, we can't affirm the verdict, and I submit it's time to end this matter, put it to rest. It should be reversed. Thank you. Thank you very much, sir. Thank you. Mr. Shurtleff, we're going to give you three minutes. You thought you had a minute, 15 seconds, and you've got three now. Thank you, Your Honor. I disagree somewhat with Mr. Burrow characterizing what's gone before in the history, that there was never a question about the sufficiency of the evidence below or here. Quite frankly, I think you've heard enough from me in two appearances, and you know, you've read the transcript, that that was the argument we made for our motion of acquittal at the end of the second trial, which I represented Mr. Resio in. And the judge in that case, Judge Windmill, took that motion under advisement as to Mr. Resio for a period of time until the conclusion of the trial. That's always been the issue. That's always what I've focused on. That's what I understand as evidence. And Judge Fletcher asked, what's the rest of the story? And I would submit to you that, not to be cute, but that there is no rest of the story, as Mr. Hardy would say. The evidence was a fanciful story. The evidence was, Mr. Burrow tells us that they were there for an hour before they picked up the truck. Were they told to go pick up a truck that had been stolen and to be careful and drive it to New Acres? We don't know that. The evidence doesn't know that. But isn't that as logical as standing around to pick up $12 million worth of dope that we don't know anything about? Was the fanciful story just an invention of an illegal alien who, when immigration stops people, they often tell, I think the record would show and others would know, fanciful stories? Does that implicate guilt, knowing that you had $12 million worth of dope? No. It indicates something. But what is that something? I submit there is the scope of the conspiracy. Mr. Hinton's testimony, which was very extensive, and Judge Gould, you referred to it at length in your analysis. But what did it say about Riccio and Lopez? It said a whole lot about this big organization, but what did it say about Riccio and Lopez? Nothing. I thought it said something about the cell phones and the emails and things that my colleagues didn't give way to, but that I thought were relevant. Indeed. And I'm not here to argue about cell phone and the ubiquity of them, but I would urge that we reexamine that issue because we can't walk out. I'm not going to walk out of this building without seeing a dozen people on cell phones and that. So I don't know that that adds a lot. Can we go back? I would submit that what we can't say, as Mr. Burrow would say, that the second trial was ample, that we can affirm that, because, quite frankly, we thought we'd died and gone to heaven when we found Cruz. And that's the way that case was tried. You know that. And the record shows that. And so we tried that case on Cruz, and every question was, before 118 a.m. on November 18th, what did Mr. Riccio do? And we would try the case differently, I submit. I submit that would be prejudice, and we shouldn't affirm that decision on that basis. Thank you very much, sir. That concludes argument. The case will be submitted, and we thank all counsel for their excellent arguments. All rise.
judges: Browning, B Fletcher, Gould